## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA** | * |
| | *  **No. 19-CR-358-1** |
| vs. | * |
| | * |
| **JASON MUZZICATO,** | * |
| **DEFENDANT** | * |

## DEFENDANT'S SENTENCING MEMORANDUM

**1. INTRODUCTION**

On June 25, 2019 Jason Muzzicato was indicted in the Eastern District of Pennsylvania on a two (2) count indictment. The indictment charged Mr. Muzzicato with Possession of Firearms by a Person Subject to a Domestic Violence Protective Order, in violation of 18 U.S.C.§§922(g)(8) and 934(a)(2); (Count 1), and Possession of an unregistered firearm, (destructive device), in violation of 26 U.S.C. §§5861(d), 5841, 5845(a) and 5871: (Count 2).

On September 3, 2019, Mr. Muzzicato was indicated on a four count Superseding Indictment. The Superseding Indictment included the original two counts and additionally, Possession of firearms by an unlawful user of a controlled substance, in violation of 18 U.S.C. §§922(g) (3) and 924 (a) (2) (Count 3); and Knowingly operating an aircraft when not registered, in violation of 49 U.S.C. § 46306 (b) (6) (A) (Count 4).

On December 17, 2019, Mr. Muzzicato pled guilty to Counts 1, 2, and 4 of the Superseding Indictment before the Honorable Joseph F. Lesson, Jr. A

1

Written Plea Agreement was executed by Mr. Muzzicato, Defendant's Counsel and the Government.

2. **STATUTORY MAXIMUM SENTENCES AND SENTENCING GUIDELINES**

The Court may impose the following Statutory Maximum Sentence: Count one: maximum imprisonment is ten (10) years; Count two: maximum imprisonment is ten (10) years; count 4; maximum imprisonment is three (3) years.

For Counts one and two, The Court may impose a term of supervised release of not more than three (3) years. For count four, The Court may impose a term of supervised release of not more than one year.

The Defense agrees with the Presentence Report that the Criminal History Category is one. The offense gravity score is 19, and the sentencing guidelines are 30 to 37 months.

3. **FEDERAL SENTENCING GUIDELINES-POST BOOKER SENTENCING IN THE THIRD CIRCUIT**

   A. **Courts Must Impose Sentence in Consideration of the Relevant Section 3553(a) Factors "Regardless Whether [the Sentence] Varies from the Sentence Calculated under the Guidelines"**

   As revised by United States v. Booker, 543 U.S. 220, 245-46 (2005), the Sentencing Reform Act "requires a sentencing court to consider [advisory]

Guidelines ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." This means that a district court's primary obligation is to choose a sentence in light of the all the statutory sentencing factors (including the advisory guideline range) in the context of a defendant's particular case, and that sentence may or may not be imposed with regard to the guideline range. See United States v. Coleman, 451 F.3d 154, 158 (3d Cir. 2006) ("the Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in § 3553(a)").

In the Third Circuit, district courts "follow a three-step sentencing process." United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker. . . .
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force. . . .
> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors . . . in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

<a>
</a>
<p>3</p>

Id. (internal quotations and citations omitted; emphasis added). Thus, in the critical third Gunter step, the district courts must apply their own independent judgment to the sentence to be imposed in light of the sentencing factors, whether or not that judgment results in a sentence within the advisory range. See also United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006) (district court must give "meaningful consideration to the section 3553(a) factors" and impose sentence for reasons that are logical and consistent with those factors, but rejecting presumption that sentence should be imposed within guideline range).

Moreover, as the Court explained in Gunter, section 3553(a) "begins with the broad mandate that sentencing courts 'shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes'" of sentencing set out in the statute. 462 F.3d at 243 n.9. This broad mandate applies to the consideration of all of the section 3553(a) factors, and it necessarily takes precedence over the advisory guideline range and other individual factors.

A district court commits error if, in applying the third Gunter step, it believes that it is bound by any aspect of the sentencing guidelines. This aspect of post-Booker Third Circuit law was illustrated clearly in Gunter, 462 F.3d 237. There the defendant's guideline range was based on his offense for possession with intent to distribute cocaine base ("crack" cocaine). The guidelines for crack cocaine are subject to the 100-to-1 crack versus powder cocaine differential, meaning that the defendant's advisory guideline range was significantly higher than had his offense involved powder cocaine. Id. at 238. At sentencing, the defense asked the district court to consider the unwarranted nature of that differential in imposing sentence. The district court refused to do so, concluding that it was not at liberty to reconsider Congress' intent in establishing and maintaining the

differential. Id. 239. The Third Circuit remanded, because the district court's refusal to consider the differential merely as advisory in the third step of the sentencing process amounted to treating the guidelines as mandatory. Id. at 247-48; see also Cooper, 437 F.3d at 330-31 (rejecting notion that guideline sentence is presumptively correct as "com[ing] close to restoring the mandatory nature of the guidelines").

Accordingly, district courts now have much greater discretion in sentencing than was previously afforded, and the Third Circuit has spoken firmly in support of this discretion. The courts should exercise their sentencing discretion to further the directives and purposes of 18 U.S.C. § 3553, which are set forth and applied to [the defendant's] case in the next sections.

4.  **THE DIRECTIVE AND FACTORS EMBODIED IN SECTION 3553(a)**

    The primary directive in section 3553(a), as noted above, is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2," which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) (2).

In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a) (1);

(2) the kinds of sentences available, the advisory guideline range and pertinent guideline policy statements, § 3553(a) (3)-(5);

(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a) (6);

(4) the need to provide restitution to any victims of the offense, § 3553(a) (7).

This is not an exhaustive list of the factors the Court can consider, as "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 is required to "recogniz[e] that imprisonment is <u>not</u> an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (emphasis added).

5. **APPLICATION OF THE STATUTORY FACTORS TO THIS CASE**

Jason Muzzicato was born on April 8, 1975 and he is 45 years of age. He is the only child of the marriage of Sam Muzzicato and Margaret (Peggy) Dolan.

Mr. Muzzicato indicates that his mother raised him and did the best she could regarding his upbringing.

Mr. Muzzicato has two children from two different relationships. Colin Muzzicato is 23 years of age and his youngest son, Matthew, is 12 years of age. Both of his sons speak very highly of their father and they have a very close relationship with their father.

The Defendant has no prior record. Due to the loss of his business because of his incarceration, it would make sense that the Defendant receives a mental health evaluation and participate in any counseling that is recommended.

The use of methamphetamine is involved in this case. It would make sense that the Defendant would follow up on any treatment concerning this type of drug.

Mr. Muzzicato owned and operated Bangor Motor works located in Bangor,

Pennsylvania for approximately ten years leading up to his arrest.

6. **NUMERIC FIREARM CALCULATION**

It is Mr. Muzzicato's position that he possessed five firearms while his son, Colon, possessed four firearms and his son, Colon, possessed a pink and black colt handgun which he obtained for his girlfriend. Colon will testify in this regard at Mr. Muzzicato's sentencing.

7. **NATURE OF THE CIRCUMSTANCES OF THE INSTANT OFFENSES**

Mr. Muzzicato is charged with Possession of firearms by a person subject to a domestic violence protective order, Possession of an unregistered firearm – destructive device and Knowingly operating an aircraft when not registered. Mr. Muzzicato is not charged with using his drone aircraft to drop explosive devices on anyone or anyone's property. Mr. Muzzicato realizes that subject to a domestic violence protective order he was not allowed to possess firearms. The reason Mr. Muzzicato was in possession of firearms was that in October 2017 Mr. Muzzicato was threatened by another male with a knife. Mr. Muzzicato was outside doing yard work when he reported to police that there was a male outside his residence walking up and down in front his residence. He didn't feel comfortable and went inside the residence and retrieved a toy cap gun. He came back outside and he was confronted by the large male who was wearing blue jeans, a blue sweat shirt and had a mask on. At this time, the large male was displaying a very large knife. The male asked if he was Jason Muzzicato and Mr. Muzzicato said yes and pulled out the toy gun. This made the large male turn around and leave. The male said to him he would be back and left the scene. Mr. Muzzicato reported this incident to the Washington Township Police Department.

Mr. Muzzicato was arrested on June 7, 2019 and has been in the Lehigh County Prison since that time.

Mr. Muzzicato has always been interested in drones and operated drones.

He has also had an interest in making explosive devices but, once again, the charges in this Federal indictment do not relate to him utilizing drones and explosive devices on any individuals or on any individual's property.

Mr. Muzzicato accepted responsibility for his criminal conduct and entered into a Plea Agreement. Mr. Muzzicato admitted to the factual basis for his plea.

## 8. **CONCLUSION**

For the foregoing reasons, Mr. Muzzicato respectfully requests this Honorable Court to sentence him under the charges which he has plead guilty to and at the criminal offense level of nineteen.

                                                        Respectfully Submitted,
                                                        HUBER WALDRON & WILLIAMS, LLP

Dated:                                        /s/ John J. Waldron, Esquire
                                                        Attorney I.D. No. 36853
                                                        535 Hamilton Street, Suite 102
                                                        Allentown, PA  18101
                                                        610-435-9790